## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 7
an unincorporated association,

    Plaintiff

v.

DILLON COMPANIES, LLC, a Colorado corporation

    Defendant.

### COMPLAINT FOR INJUNCTIVE RELIEF PENDING ARBITRATION

Plaintiff United Food and Commercial Workers, Local 7 ("Plaintiff" or "Union") alleges as follows:

### I.    PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a labor organization as defined by 29 U.S.C. § 152(5) with offices located in Wheat Ridge, Colorado.

2. Defendant Dillon Companies, LLC ("King Soopers" or "Defendant" or "Employer"), does business as King Soopers and City Market. King Scoopers is an employer as defined by 29 U.S.C. § 152(2) and is a for-profit corporation that operates over one hundred retail supermarkets branded as "King Soopers" and "City Market" in Colorado and Wyoming. Employer is a wholly owned subsidiary of Kroger.

3. This Court has jurisdiction of this matter pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

4. Venue is proper in this Court because the matters giving rise to this Complaint occurred within this judicial district.

## II.     FACTUAL ALLEGATIONS

5. The Union is the sole and exclusive bargaining representative of retail and meat employees organized in sixteen bargaining units at approximately 104 King Soopers and City Market stores located throughout Colorado.

6. The Union and the Employer are parties to sixteen Collective Bargaining Agreements ("CBAs"). In a Memorandum of Agreement ("MOA") executed on January 21, 2022, the parties agreed to modify the terms of each of their agreements and to keep them in force from January 8, 2022 to January 6, 2025.

7. The CBAs have identical scope of work provisions that include an agreement that outside vendors may only perform specific types of work. Outdoor plant work is not one of those types of work.

8. King Soopers sells bedding plants and related items in front of its stores during the growing season. For decades, the floral clerks, managers, and other members of the bargaining unit have performed work on these plants after delivery by an outside vendor. The bargaining unit members unload, water, rotate, cull, trim, prune, and merchandise/display the products. Bargaining unit employees also build and maintain the fixturing where products are displayed and clean the areas where plants are displayed.

9. During the season, there has been an average of approximately twenty to forty hours of additional work available each week at each store for members of the bargaining unit to perform work related to bedding plants. The CBAs set forth a bidding process for the selection of shifts based on seniority. These additional hours have also resulted in overtime pay for bargaining unit members.

10. On March 4, 2023, King Soopers announced plans to bring in an outside vendor, National Garden Service, in Spring 2023. According to King Soopers, National Garden Service employees will now perform many of the tasks that floral managers and clerks have performed in the past: water plants, cull plants, merchandise and display products, clean porch areas, and dispose of product.

11.     As of March 31, 2023, National Garden Service employees have already appeared at least one King Soopers store, where they have informed the floral manager that they are available to perform any task that the manager assigns to them regarding the plant products.

12.     On March 24, 2023 and April 6, 2023, the Union filed grievances under the Denver collective bargaining agreement alleging that King Soopers' action of assigning outdoor gardening work to National Garden Service is outsourcing of bargaining unit work in violation of that agreement. The Union filed the grievances pursuant to the grievance procedure set forth in that agreement, which ends in final and binding arbitration.

13.     On March 24, 2023 and April 6, 2023, the Union filed grievances under the Colorado Springs collective bargaining agreement alleging that King Soopers' action of assigning outdoor gardening work to National Garden Service is outsourcing of bargaining unit work in violation of that agreement. The Union filed the grievances pursuant to the grievance procedure set forth in that agreement, which ends in final and binding arbitration.

14.     On March 28, 2023 and April 6, 2023, the Union filed grievances under the Pueblo collective bargaining agreements alleging that King Soopers' action of assigning outdoor gardening work to National Garden Service is outsourcing of bargaining unit work in violation of that agreement. The Union filed the grievances pursuant to the grievance procedure set forth in that agreement, which ends in final and binding arbitration.

15.     The CBAs have limitations on remedies in certain circumstances, including for lost work opportunities. In such instances, an employee shall be made whole by being permitted to work the number of hours lost, above and beyond the posted schedule, within four weeks of the settlement.

16.     On April 10, 2023, the Union requested expedited arbitration of these grievances due to the risk of irreparable harm. On April 12, 2023, Employer did not immediately agree to expedited arbitration of these grievances, asserting instead that the request was premature, even though it would have posed no hardship to King Soopers to arbitrate this dispute in an expedited fashion. The Union is ready and willing to proceed through the normal steps of the grievance

procedure.

17. The grievance arbitration procedures will eventually culminate in a final and binding arbitration decision. Under these grievance arbitration procedures, it usually takes over one year from the date of the grievance to receive an arbitral decision on that grievance.

18. Absent injunctive relief, it will be impossible for an arbitrator to accurately determine the impact of the outsourcing on the availability of unit work because there is no evidence that King Soopers is keeping any records of the work the National Garden Service employees perform or even how many National Garden Service employees are present at the stores or for how long they are present.

19. Absent injunctive relief, it will be impossible to account for the impact of any lost hours that could be tracked because of how employees bid on shifts. There is simply no way for an arbitrator to determine who would have placed a bid on the outdoor garden shifts. It also creates a cascade effect: an arbitrator cannot determine who would bid on and receive the shifts vacated by employees who successfully received the outdoor garden shifts. Therefore, there is no way to know who lost out on shifts they would have otherwise worked.

20. Absent injunctive relief, many of the Union's members who work part-time will be unable to be promoted up to full-time status because an arbitrator will not be able to determine who would have bid on additional outdoor garden shifts to resolve whether employees would have worked the hours required to reach full-time status.

### III.     CLAIM FOR INJUNCTIVE RELIEF PENDING ARBITRATION

21. The foregoing actions by the Employer will, unless promptly enjoined, cause the Plaintiff and the employees it represents, irreparable harm and will frustrate the arbitral process initiated by the Union to protect its members from loss of bargaining unit work. Immediate injunctive relief is appropriate and necessary to maintain the status quo to permit the arbitrator to consider and act upon the dispute and render a meaningful decision.

22. An injunction maintaining the status quo will not cause countervailing harm to the Employer. The Employer would simply have to continue to have its employees, the Union's

members, perform the work they have traditionally performed on outdoor plants.

23. In the unlikely event that it is found in arbitration that the Employer is not required to assign the outdoor gardening work to bargaining unit members as set forth in the CBAs, the Employer still would not be caused significant harm by the issuance of an injunction, as the only harm to the Employer will be that it had to unnecessarily assign the work to bargaining unit members who were already in its employ. That harm would be minimized by expediting the arbitration.

## IV.    PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this Court award it the following relief:

1. Preliminary and permanent injunctive relief preserving the status quo that preceded the present controversy pending the resolution of the parties' dispute under their Collective Bargaining Agreement through a final and binding arbitration award, by restraining Defendant from outsourcing outdoor gardening work;

2. An Order directing the parties to submit this dispute to expedited arbitration;

3. The costs of suit herein, including reasonable attorneys' fees; and

4. Such other and further relief as the Court deems proper.

Respectfully submitted this 17th of April 2023.

> WEINBERG, ROGER & ROSENFELD
> A Professional Corporation
>
>
> By: */s/ Caren P. Sencer*
> CAREN P. SENCER (CSB 233448)
> 1375 55th Street
> Emeryville, California 94608
> Telephone 510.337.1001
> Email:  csencer@unioncounsel.net
> *Attorneys for Plaintiff*