IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Gordon P. Gallagher

Civil Action No. 23-cv-00958-GPG

UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 7,

    Plaintiff,

v.

DILLON COMPANIES, LLC,

    Defendant.

## ORDER

This matter is before the Court pursuant to the Plaintiff's (the Union) Motion for Temporary Restraining Order and Injunctive Relief Pending Arbitration (D. 4). The Court denied the motion as to the ex parte temporary restraining order (D. 15). The Court heard oral argument regarding injunctive relief (construing the request as a motion for a preliminary injunction) on April 25, 2023, and has scheduled an evidentiary hearing for April 28, 2023. The Court indicated in the hearing that, in the interim, it would address jurisdictional concerns raised by Defendant (Dillon), which the Court will address in this Order. The Court finds that it has subject matter jurisdiction to conduct an evidentiary hearing for the following reasons.

### I. FACTS[1]

The Union commenced this civil action pursuant to 29 U.S.C. §185 (sometimes referred to as "Section 301"), seeking an injunction against what it alleges is Dillon's violation of the parties'

---

[1] The Court draws its facts from the Union's Complaint for Injunctive Relief Pending Arbitration (D. 1) and its motion for a preliminary injunction (D. 4).

1

collective bargaining agreement at Dillon's King Soopers and City Market grocery stores in Colorado and Wyoming. The dispute arises from Dillon's contracting with a third party, National Garden Services, to perform certain work relating to outdoor displays of seasonal plants offered for sale at Dillon's stores. The Union contends that work on such displays is reserved for bargaining unit members under the terms of the collective bargaining agreement. The Union seeks an injunction barring Dillon from assigning such work to National Garden Services employees until the Union's grievances can be arbitrated. Among the issues that Dillion has raised in response is that this Court lacks subject matter jurisdiction to enter the Union's requested injunction under the Norris-LaGuardia Act, 29 U.S.C. §101 *et seq*.

## II. LEGAL STANDARD

The Norris–LaGuardia Act sets forth the "[f]ederal labor law policy prohibiting injunctions in peaceful labor disputes over arbitral issues." *Tchrs. Ass'n of Japanese Educ. Inst. of New York, Inc. v. Japanese Educ. Inst. of New York*, 724 F. Supp. 188, 191 (S.D.N.Y. 1989) (citing 29 U.S.C. §§ 101–115 (1982)). In 1970, the United States Supreme Court "allowed courts to consider the propriety of an injunction where necessary to preserve the arbitral process." *Id.* (citing *Boys Markets, Inc. v. Retail Clerks Union, Loc. 770*, 398 U.S. 235 (1970)); *see also Dillon Companies, Inc. v. United Food & Com. Workers Union Loc. No. 7*, No. CIV.A. 09-CV-01364-P, 2009 WL 1795577, at *2 (D. Colo. June 23, 2009) (granting in part and denying in part Dillon's motion for a preliminary injunction against the Union). Generally, a court may not issue an injunction unless the court determines "that the ordinary principles of equity support injunctive relief." *Dillon Companies, Inc.*, 2009 WL 1795577, at *7.

In order to obtain injunctive relief in the Tenth Circuit within a *Boys Market* context, the movant must show: (1) the dispute is subject to mandatory arbitration under the labor contract;

2

(2) the arbitrable dispute is the dispute underlying the lawsuit, rather than a collateral dispute; and (3) the moving party has demonstrated that it will suffer irreparable injury, that the balance of hardships favors it, and that it has a probability of success on the merits.  *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO, Loc. 2-286 v. Amoco Oil Co. (Salt Lake City Refinery)*, 885 F.2d 697, 703 (10th Cir. 1989).  In other words, "an injunction in aid of arbitration is appropriate . . . only when the actual or threatened harm to the aggrieved party amounts to a frustration or vitiation of arbitration."  *United Gov't Sec. Officers of Am. Int'l Union v. Serv. Emps. Int'l Union*, 646 F. Supp. 2d 91, 94 (D.D.C. 2009) (citation omitted).  For the limited purpose of this Order, the Court only examines whether it has subject matter jurisdiction to conduct an evidentiary hearing.[2]

### III.  HISTORY

In general terms, the Norris-LaGuardia Act reflects a Congressional reluctance for courts to interfere with the labor relations process by issuing injunctions in labor disputes.  Specifically, 29 U.S.C. §101 provides that courts "shall [not] have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter."  The statute is curious in the sense that it does not proceed to <u>authorize</u> any particular types of permissible labor injunctions; rather, it only specifies certain types of injunctions that are <u>prohibited</u> (none of which apply here).  29 U.S.C. §104, 105.  The statute is susceptible to the negative implication that injunctions that are not prohibited by §104 are permitted, as 29 U.S.C. §107-109 recite certain procedural requirements that must be observed in situations where courts <u>do</u> grant labor injunctions.

---

[2] The Court is cognizant of the fact that this standard is fact-based.  However, this only weighs the analysis more in favor of this Court conducting an evidentiary hearing.

To some extent, the Norris-LaGuardia Act's terms stand in tension with the provisions of Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, which grants federal courts the power to entertain suits for violations of collective bargaining agreements.  It is that tension between Section 301 and the Norris-LaGuardia Act that led to the seminal Supreme Court decision in *Boys Markets*.  In that case, the employer and union were parties to a contract that contained both a broad arbitration provision and a no-strike clause.  Despite the no-strike clause, when a dispute arose over whether certain work was properly assigned to union members or not, the union called a strike to protest the work assignments.  The employer then commenced a Section 301 suit in federal court, seeking to enjoin the strike as violating the no-strike provision of the contract.

Noting the "ostensibly inconsistent positions" that the two statutes represented, the Supreme Court addressed the historical background that led to the Norris-LaGuardia Act, namely, a period of labor relations in which courts issued "a large number of sweeping decrees, often [ ] *ex parte*, drawn on an ad hoc basis without regard to any systematic elaboration of national labor policy." *Boys Markets*, 398 U.S. at 250.  Over time, that trend yielded to a more cooperative form of labor relations that favored collective bargaining and alternative dispute resolution, yielding statutes like Section 301 that favored parties resorting to contract-based remedies.  *Id.*  The Court observed that in this newer era, court injunctions could serve a valuable purpose in compelling parties toward their agreed-upon dispute resolution procedures and away from self-help.  *Id.* at 251-52 ("[A]n important federal policy was involved in the peaceful settlement of disputes through the statutorily mandated arbitration procedure [and] this important policy was imperiled if equitable remedies were not available to implement it[. Thus,] Norris-LaGuardia's policy of nonintervention by the federal courts should yield to the overriding interest in the successful implementation of the arbitration process").  The Court noted that the purposes of Norris-

4

LaGuardia would be advanced "by a remedial device" – an injunction – "that merely enforces the obligation that the union freely undertook under a specifically enforceable agreement to submit disputes to arbitration," particularly where "the unavailability of equitable relief in the arbitration context presents a serious impediment to the congressional policy favoring the voluntary establishment of a mechanism for the peaceful resolution of labor disputes." *Id.* at 252-53.  Thus, *Boys Market* endorsed the notion that "the core purpose of the Norris-LaGuardia Act is not sacrificed by the limited use of equitable remedies to further this important policy" of compelling parties towards contract-based dispute resolution.[3]  *Id.*

Since *Boys Market*, many courts, including the Tenth Circuit, have settled on a "frustration of arbitration" standard for determining when court-issued injunctions in Section 301 cases are appropriate despite the policies embodied by the Norris-LaGuardia Act.  In *Amoco Oil*, 885 F.2d at 702, the employer implemented a drug testing policy over the union's objection.  The union filed a grievance and sought arbitration, and simultaneously filed a Section 301 suit seeking to enjoin the implementation of the testing policy pending arbitration.  The employer argued that the Norris-LaGuardia Act deprived the court of jurisdiction to enter the requested injunction, but the Tenth Circuit disagreed.  It recognized that "*Boys Markets* injunctions are available to enjoin employer breaches of collective bargaining agreements which threaten the arbitral process." *Id*.  It then turned to the question of what standard governed the determination of whether an injunction was appropriate, ultimately joining several other circuits in "focus[ing] on the effect the employer's action will have on the ability of the arbitrator to return the parties substantially to the status quo

---

[3] The injunction in *Boys Market* was sought by the employer against the union.  Courts sometimes refer to requests by unions seeking to enjoin employer practices pending arbitration as "reverse *Boys Market* injunctions."  As *International Brotherhood of Teamsters v. Airgas, Inc.*, 885 F.3d 230, 240-41 (9th Cir. 2018) (Wilkinson, J., dissenting), notes, those labels are "widely recognized if textually dubious."

5

ante" and considering "whether the employer's action will make the arbitral process a 'hollow formality.'"[4]  *Id.*   The Tenth Circuit concluded that if the arbitrator ultimately concluded that the implementation of the drug testing policy was improper, the arbitrator's ability to grant a remedy to the union would nevertheless be frustrated because the arbitrator could not undo reputational damage and stigmatization of employees who were affected by the policy during the interim period during which it was being enforced.  *Id.* at 707 ("[O]nce an employee's reputation is sullied, we see no way that an arbitral award prohibiting the company from unilaterally implementing the drug testing program would provide relief").  Thus, the Tenth Circuit held that the imposition of an injunction preventing the implementation of the drug testing policy pending arbitration was permissible despite the Norris-LaGuardia Act.  *Id.* at 709.

## IV. ANALYSIS

With this historical background in mind, the Court can turn to Dillon's arguments that the Norris-LaGuardia Act operates as a jurisdictional bar in this case.  Even assuming that the Norris-LaGuardia Act is capable of stripping away subject matter jurisdiction that Congress has conveyed to the courts via 29 U.S.C. §185,[5] cases like *Amoco Oil* make clear that this Court nevertheless has the power to issue an injunction against Dillon if the Court finds that the Union has satisfied that case's "frustration of arbitration" standard.  That question is intrinsically a fact-specific one, turning on the nature of the dispute and the alleged impediments to the arbitrator providing an effective remedy.  Where challenges to the Court's subject matter jurisdiction turn on disputed

---

[4] *Amoco Oil* recognizes that this standard "coincides with" the traditional requirement that injunctions be premised upon a showing of irreparable injury to the movant.  *Id.* at 704.

[5] In this regard, it may be more appropriate to conceive of the Norris-LaGuardia Act as being a restraint on the remedies a court may grant, rather than a statute that strips the court of jurisdiction to even hear the case.  *See Drywalll Tapers & Pointers of Greater New York v. Nastasi & Assocs, Inc.*, 488 F.3d 88, 93 (2d Cir. 2007) ("Norris–LaGuardia is a limit on remedial authority, not subject matter jurisdiction").

6

facts, the Court "may consider evidence to resolve disputed jurisdictional facts," such as by considering affidavits or by holding an evidentiary hearing. *See, e.g., Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023).

That is precisely the Court's goal for the evidentiary hearing scheduled for April 28, 2023. If the Union can show that the circumstances of this case satisfy the "frustration of arbitration" standard of *Amoco Oil*, and all other prerequisites to injunctive relief are present, the Court will grant appropriate injunctive relief. On the other hand, if the Union is unable to demonstrate that the purposes of arbitration will be frustrated without an injunction, the Court will deny the Union's request. Whether that denial is on the merits or upon a finding that the Court lacks subject matter jurisdiction due to the operation of the Norris-LaGuardia Act (or both) is irrelevant, as the functional outcome is the same in either event: the request for an injunction is denied. Accordingly, the Court currently denies Dillon's request to dismiss this case on jurisdictional grounds. The Court is free to revisit this issue after the hearing.

Nevertheless, the Tenth Circuit's decision in *Amoco Oil* serves as an example of a case wherein a dispute over ordinary workplace rules was nevertheless sufficient to warrant preliminary injunctive relief. *See also Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 372 F. Supp. 2d 83, 91 (D.D.C. 2005) (granting the union's motion for a preliminary injunction on its petition to compel arbitration). Although the Court can accept the proposition that findings that the arbitration process will be frustrated should not be made lightly and should not be based on trivial instances of "irreparable" harm, *see Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter &*

*Gamble Mfg. Co.*, 864 F.2d 927, 931 (1st Cir. 1988),[6] the Court cannot conclude that the Union's *prima facie* showing here is insufficient.

As discussed during the April 25, 2023, hearing, an arbitrator can conclude that certain work hours were improperly assigned to non-bargaining unit employees, but the contract's terms may frustrate bargaining unit members to effectively reap the benefits of such a ruling. Among other things, the parties' contract requires that any award for improperly assigned hours be recouped by the affected employees within four weeks following the award. Given the amount of daily work that is potentially being improperly assigned by Dillon here (the Union represents that the work at issue here accounts for as much as two-four employees' worth of time per week) and the duration of the seasonal program (Dillon represents that the program will remain in effect through the "end of summer," spanning as much as four-five months), an arbitrator may wind up concluding that the Union is entitled to recoup several hundred hours per store. However, given the contract's four-week limitation on recouping awards of improperly assigned hours, it may very

---

[6] In *Procter & Gamble*, the employer threatened to "implement[ ] changes governing work shifts, safety, and employee dress." The court in *Procter & Gamble* refused to find the arbitral mechanism was rendered hollow simply because employees might be inconvenienced (or even somewhat harmed) in the interim. As it explained:

> It remained altogether conceivable (indeed, quite likely) that an arbitrator could restore the work schedules and dress requirements that existed beforehand. Such relief, though not as satisfactory as freezing the status quo, would be far from meaningless. . . . We recognize that some turbulence will attend the inauguration of the work team concept and the related changes in schedules and dress. Disruption of child care arrangements or creation of a conflict with the demands of a second job, to cite two examples drawn from plaintiff's affidavits, certainly can prove to be wrenching experiences. But the mere presence of such elements does not entitle every employee-suitor to interim relief as an absolute matter. Dislocations invariably attend any modification in working conditions. If disruption of workers' lives and habits was deemed sufficient harm on which to bottom injunctive relief, then the exception would swallow the rule, and the courts would be mired hip-deep in matters which Congress intended to remit to an arbitral forum.

864 F.2d at 931-32.

well be impractical, if not mathematically impossible, for the Union to enjoy the benefits of an arbitral ruling in its favor. With those circumstances in mind, the Court would be inclined to find that the Union had met the *Amoco Oil* "frustration of arbitration" standard, which would warrant preliminary injunctive relief to preserve the arbitrator's ability to render an effective award.

## V.  CONCLUSION

Accordingly, the Court rejects Dillon's argument that the Court lacks subject matter jurisdiction or that the Court should dismiss the Union's Complaint prior to holding an evidentiary hearing as scheduled on April 28, 2023.

DATED April 26, 2023.

BY THE COURT:

Gordon P. Gallagher
United States District Judge